

# The Attorney General of Texas

September 19, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Juston, TX. 77002-3111
..3/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mack Wallace
Chairman
Railroad Commission of Texas
P. O. Drawer 12967
Austin, Texas   78711

Opinion No.  JM-69

Re:   Fee  payable  to  Railroad
Commission   on   transfer   of
certificate   or   permit   of
authority

Dear Mr. Wallace:

You have asked the amount of transfer tax, if any, that is due
the Railroad Commission of Texas under article 911b, sections 5a(a),
6(e) and 6(f), V.T.C.S., when the owner of a motor carrier permit or
certificate of authority pledges it as collateral for a note and
defaults on the note.

Under the facts presented to us, it appears that the original
owner of a permit or certificate of authority issued by the Railroad
Commission was a motor carrier, operating pursuant to that authority,
who borrowed $75,000.  The creditor who loaned the $75,000 held the
operating authority as security for the note.  When the original owner
defaulted on the note, the operating authority was transferred to the
creditor in cancellation of the debt of $75,000, apparently by a
voluntary assignment reciting $1 as cash consideration.  We believe
that the transfer tax provisions apply under these facts and that the
amount of tax to be paid by the holder of the operating authority is
$7,500.10.  We express no opinion as to other requirements regarding
transfers of operating authority under article 911b.

Section 5a(a) of article 911b provides:

[I]n case a certificate is transferred . . . the
transferee shall pay the Commission a sum of money
equal to ten (10) percent of the amount paid as a
consideration    for    the    transfer    of    the
certificate . . . .

Sections 6(e) and 6(f) contain the same provision in case a permit is
transferred.

The questions are whether an owner who pledges its operating
authority as collateral and a creditor who holds the operating

authority after default and assignment are a "transferor" and "transferee," respectively, and whether the receipt of the permit or certificate under these facts is a taxable transfer. To qualify as a transferee of a motor carrier certificate within the contemplation of article 911b, section 5a(a), the recipient of the certificate must show, among other things, that it is capable of continuing service under the certificate. See Brown Express, Inc. v. Railroad Commission of Texas, 415 S.W.2d 394, 396 (Tex. 1967); Attorney General Opinion M-1201 (1972). That aspect of a taxable transfer is not an issue under the facts presented to us because the creditor holding the operating authority is willing and able to operate it until such time as it may be transferred to a third party.

Sections 5a(a), 6(e), and 6(f) envision several types of transfers in that they each state that any certificate or permit "held, owned, or obtained by any motor carrier . . . may be sold, assigned, leased, transferred, or inherited." (Emphasis added). The word "obtain" in its general sense means to get hold of by effort, to get possession of, to procure, and to acquire in any way. See Black's Law Dictionary, 972 (5th ed. 1979); Webster's New International Dictionary, 1682 (2nd ed. 1947). The word "transfer" was defined in Ditto Investment Company v. Ditto, 302 S.W.2d 692, 694 (Tex. Civ. App. – Fort Worth 1957), rev'd on other grounds, 309 S.W.2d 219 (1958), wherein the court stated:

> Common use of the word 'transfer' is to denote the passing of title in property, or an interest therein, from one person to another, and, in this sense, the term means that the owner of property delivers it to another with the intent of passing the rights which he had in it to the latter.

Because the interest in the permit or certificate of authority passes from the possession of the owner who pledges it as collateral to that of the creditor to whom it is assigned after default on the note, we believe the transaction is a taxable event under article 911b.

The amount of tax on such a transfer is 10 percent of the amount paid as consideration for the transfer of the permit or certificate of authority. The actual cash consideration under the facts presented to us is $1. When a permit or certificate of authority is used to secure a note for $75,000, the true consideration is much greater than $1. Attorney General Opinion O-1505 (1939) dealt with the transfer tax for a certificate that was leased. In that opinion, this office stated that the value of the use of the certificate is determined by the parties themselves. The parties at hand clearly contemplate a certificate value of at least $75,000. Therefore, the amount of the tax to be paid by the transferee in this instance is 10 percent of

$75,000, plus 10 percent of the $1 given as actual cash consideration, resulting in a total transfer tax of $7,500.10.

### S U M M A R Y

The transfer tax provisions of article 911b, sections 5a(a), 6(e), and 6(f), V.T.C.S., apply to a creditor capable of continuing service under a motor carrier permit or certificate of authority that is assigned to the creditor after default on a note for which the authority is collateral. Since the amount of the transfer tax is 10 percent of the amount paid as consideration for the transfer, the tax is 10 percent of the amount of the cancelled debt, plus 10 percent of any additional cash consideration.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
David Brooks
Colin Carl
Jim Moellinger
Nancy Sutton